UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| William Robert Haws, ) | Civil Action No. 5:20-cv-1804-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | ORDER |
| Kilolo Kijakazi,[1] Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court reverses and remands the Commissioner's decision for the reasons discussed herein.

I.     Relevant Background

   A.     Procedural History

On June 18, 2018,[2] Plaintiff protectively filed an application for DIB alleging a disability onset date of June 7, 2016. Tr. 138-40. His claim was denied initially, Tr. 59, and upon reconsideration, Tr. 72, and Plaintiff requested a hearing, Tr. 87-88. Prior to the hearing, Plaintiff amended his onset date to June 7, 2018.[3] Tr. 156. On October 29, 2019, a hearing was held before

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Kilolo Kijakazi for Andrew Saul as Defendant in this action.

[2] Although the Protective Filing Worksheet is dated June 22, 2018, Plaintiff's protected filing date, as indicated in the Decision by the Social Security Administration is June 18, 2018. Tr. 10.

[3] During the hearing, Plaintiff's attorney noted the change of the onset date—the ALJ indicated

an Administrative Law Judge ("ALJ") and testimony was taken from Plaintiff, who was represented by counsel, and from a vocational expert ("VE"). Tr. 31-51. On November 7, 2019, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. Tr. 7-20. Plaintiff requested review of the decision from the Appeals Council, Tr. 136-37, but the Appeals Council denied review on March 5, 2020, making the ALJ's decision the Commissioner's final decision for purposes of judicial review, Tr. 1-3. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed May 8, 2020. ECF No. 1.

B.      Plaintiff's Background

Born on June 16, 1957, Plaintiff was 61 years old on his alleged onset date of June 7, 2018. Tr. 138, 156. In his initial Disability Report-Adult form Plaintiff noted that he completed four or more years of college in 1998, and he had completed specialized job training in the area of computer aided design. Tr. 159. He listed his past relevant work ("PRW") as an employee at Ametek Aerospace (April 1991-June 2012) and as a manufacturing engineer, dealing with fiber optic repair (December 2013-June 2016). *Id.* Plaintiff indicated that he stopped working on June 7, 2016, because of his medical conditions, which he listed as diabetes and amputation of his big toe. Tr. 158. Plaintiff indicated that he was 5'6" tall, weighed 185 pounds, and his conditions caused him pain or other symptoms. *Id.*

C.      Administrative Proceedings

Plaintiff appeared with counsel in Myrtle Beach, South Carolina for his administrative hearing on October 29, 2019. Tr. 31. VE Dawn Bergren also appeared and testified. *Id.*

1.      Plaintiff's Testimony

---

that she had June 1, 2018, as the amended date in her records, and the ALJ used June 1, 2018, in the Decision. Tr. 10, 34-35.

In response to questions from the ALJ Plaintiff stated that he lived with his wife, stepdaughter, and granddaughter. Tr. 36. Plaintiff testified that his stepdaughter was employed, and his granddaughter attended daycare during the week. Tr. 37. His wife was retired, and he and his wife watched his granddaughter on the weekends. *Id.* According to Plaintiff, he had a driver's license but was able to drive only short distances due to numbness in his hands and feet that he experienced if he drove long distances. Tr. 38. Plaintiff graduated from DeSales University with a degree in business communications. *Id.* Plaintiff testified that he had worked at Aurora Optics as a manufacturing engineer, and he had previously worked at Ametek, an aerospace company. *Id.* Plaintiff testified that he moved from Pennsylvania to South Carolina in June 2016 and could not find employment. Tr. 39.

When asked why he felt he could not work, Plaintiff responded, "I have severe neuropathy in my fingers and my feet. I cannot stand for long periods of time. . . . [A]s for using a computer, I'm about two hours a day. . . . Also I'm diabetic and lost my toe. So balance and standing for long periods of time is really bad." *Id.* Plaintiff testified that he was on twelve medications, including Metformin, insulin, and a high blood pressure medicine. *Id.* Plaintiff indicated that he occasionally smoked cigars and drank alcohol. Tr. 40. According to Plaintiff, he usually spent his day watching television, and he did research on the computer for friends. *Id.* For example, a friend of his had been looking for a camper, so he had been researching teardrop campers lately. *Id.*

As for household chores, Plaintiff testified that he occasionally cooked light meals, and he helped unload or load the dishwasher daily. Tr. 41. He also occasionally vacuumed. *Id.* Plaintiff testified that he went camping once or twice a year. *Id.* He indicated that he enjoyed going to a cigar lounge as a hobby. *Id.* Plaintiff testified that he was 5'6" and weighed 226 pounds. *Id.* When he and his wife watched his granddaughter on weekends, they would play ball with her. *Id.*

3

In response to questions from his attorney, Plaintiff testified that because of his hand issues, he had to keep his hands moving to avoid numbness. Tr. 42. Plaintiff testified that he had to use his cane to climb stairs. *Id.* In his past work, he only had to lift about 25 pounds. *Id.* Plaintiff did not believe he could perform his past jobs due to his issues with balance and with tingling in his hands. *Id.* Plaintiff testified that he experienced constant pain and tingling in his feet, which caused him to get four hours of sleep at night, at most. Tr. 43. Plaintiff testified that he could only do things around the house for about 10 or 15 minutes before he would need to sit and rest and put his feet up due to the numbness and pain. *Id.* Plaintiff had had his big toe amputated. *Id.* Since then, he had difficulty walking—he could occasionally walk to the mailbox, and he could stand for maybe 10 to 12 minutes without leaning against something for support. *Id.*

Plaintiff testified that he had fallen about three times in the past year. Tr. 44. He had been told that there was an issue with his blood pressure. *Id.* Plaintiff could sit for an hour to an hour and a half before needing to get up. *Id.* He could not lift more that 20 or 25 pounds since getting out of the hospital. *Id.* He had to elevate his legs five to six times a day or keep them moving. *Id.* He took a nap for one to three hours each day due to a lack of sleep at night and "to get rid of the pain." *Id.*

Plaintiff had seen treating physicians and podiatrists for various issues. Tr. 45. His podiatrists had been working to heal a cut on his right foot and had instructed him to stay off his feet and keep his leg bandaged and elevated. *Id.* Plaintiff could not afford to see an endocrinologist. *Id.* Plaintiff's medication side effects included diarrhea, light-headedness, and dizziness. *Id.* Plaintiff experienced fatigue daily. Tr. 46. Plaintiff testified that he had difficulty bending and stooping. *Id.* He believed he could work two hours a day "at the most . . . ." *Id.*

4

The ALJ followed up and noted that Plaintiff's medical records had indicated he was swimming daily. Tr. 47. Plaintiff testified that he was no longer swimming daily due to his foot wound, but he had just stopped in the last month. *Id.*

    2. VE's Testimony

The VE described Plaintiff's past work as mechanical design engineer, Dictionary of Occupational Titles ("DOT") number 007.061-018, sedentary per the DOT but medium as performed, SVP of 8; and manufacturing engineer, DOT number 012.167-042, light per the DOT but medium as performed, SVP of 8. Tr. 48. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and past jobs who could further perform "light work, can frequently climb ramps and stairs, but never ladders, ropes and scaffolds; frequently stoop, kneel, crouch and crawl while requires a cane for prolonged ambulation." Tr. 48-49. The VE confirmed that Plaintiff could do his previous jobs as described in the DOT but not as performed. Tr. 49.

In the second hypothetical the ALJ further limited the hypothetical individual to sedentary work. *Id.* The VE indicated that such an individual could do the mechanical design engineer job as described, although not as performed by Plaintiff, but the individual could not do the manufacturing engineer job. *Id.* The VE testified that her answers were based on the DOT, except as to the use of assistive devices, which were based on her own training, education, and experience. *Id.*

Plaintiff's counsel asked the VE to consider whether the hypothetical individual could still be employed if they were absent one day a week due to symptoms or medication side effects. Tr. 49. The VE indicated that that additional limitation would eliminate Plaintiff's past relevant work. Tr. 50. If the hypothetical individual could balance while standing for only 10 or 15 minutes before needing to sit, then light exertion level work would be eliminated, but sedentary work was

5

available. *Id.* If the hypothetical individual was off-task 20% or more during a shift due to symptoms or pain, past work was eliminated. *Id.*

II. Discussion

A. The Commissioner's Findings

In the November 7, 2019 decision, the ALJ made the following findings of fact and conclusions of law:

> 1. Claimant meets the insured status requirements of the Social Security Act through June 30, 2022.
>
> 2. Claimant has not engaged in substantial gainful activity since June 7, 2018, the amended alleged onset date (20 CFR 404.1571, et seq.).
>
> 3. Claimant has the following severe impairments: diabetes status-post large toe amputation (20 CFR 404.1520(c)).
>
> 4. Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with some non-exertional limitations. Specifically, claimant can lift and carry up to 10 pounds occasionally and lesser amounts frequently. He can sit for 6 hours in an 8-hour day, and stand and walk occasionally. He cannot climb ladders, ropes, or scaffolds. Claimant frequently can climb ramps and stairs, stoop, kneel, crouch, and crawl. He requires a cane for prolonged ambulation.
>
> 6. Claimant is capable of performing past relevant work as a mechanical design engineer. This work does not require the performance of work-related activities precluded by claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. Claimant has not been under a disability, as defined in the Social Security Act, from June 7, 2018, through the date of this decision (20 CFR 404.1520(f)).

Tr. 12, 15, 19.

      B.      Legal Framework

           1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

7

the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

    2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g).  The scope of

8

that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.  Analysis

Plaintiff alleges the ALJ committed reversible error by failing to properly evaluate the medical opinion offered by his treating physician, by failing to adequately explain her findings

9

regarding Plaintiff's residual functional capacity ("RFC"), and by failing to properly evaluate Plaintiff's subjective complaints. Pl.'s Br. 10-27, ECF No. 14.

       1.  The ALJ's RFC Assessment

Because the court finds error in the ALJ's RFC determination, Plaintiff's RFC-related arguments will be addressed first. Plaintiff argues the ALJ erred by finding his neuropathy was not severe. Specifically, he argues that her reasoning was flawed and that she required more of Plaintiff than is required by legal standards. ECF No. 14 at 20-21. Plaintiff then asserts that the ALJ did not properly assess his ability to stand and balance due to his paresthesia and numbness in his feet. ECF No. 14 at 23. Finally, although the ALJ found Plaintiff required a cane for prolonged ambulation, she did not address whether he needed an assistive device for standing. *Id.* at 23-24.

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(3) and (4).

The Administration's policy interpretation on assessing an individual's RFC emphasizes that the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. The functions identified in the cited regulations include physical

10

abilities, mental abilities, and other abilities affected by impairments. 20 C.F.R. § 404.1545(b)-(d).

### a. The ALJ's RFC Assessment

Here, the ALJ determined that Plaintiff has the RFC to perform a reduced range of sedentary work with the following nonexertional limitations:

> [C]laimant can lift and carry up to 10 pounds occasionally and lesser amounts frequently. He can sit for 6 hours in an 8-hour day, and stand and walk occasionally. He cannot climb ladders, ropes, or scaffolds. Claimant frequently can climb ramps and stairs, stoop, kneel, crouch, and crawl. He requires a cane for prolonged ambulation.

Tr. 17.

In her RFC analysis discussing Plaintiff's symptoms, the ALJ first considered Plaintiff's hearing testimony about his impairments, activities, limitations, medications, and methods of relieving his pain and symptoms. Tr. 16. The ALJ also considered Plaintiff's medical treatment records, starting with records that showed Plaintiff underwent amputation of his left great toe secondary to osteomyelitis in June 2018. *Id.* Plaintiff's toe was removed after he experienced cellulitis and pain in the toe for about a month, and he admitted at the time he had been non-compliant with his diabetes medication for a year. *Id.* Following his surgery, Plaintiff began seeing Dr. Abimbola M. Chris-Olaiya as his primary care provider. *Id.* The ALJ considered the records that demonstrated Dr. Olaiya's attempts to treat Plaintiff's diabetes and get his A1C levels under control. *Id.* The ALJ then explained her reasoning for concluding Plaintiff could perform sedentary work with some additional restrictions:

> In finding claimant has the residual functional capacity to perform the exertional demands of sedentary work, and requires a cane for prolonged ambulation, I have considered that claimant's left great toe has been amputated (Exhibit 1F). I also have considered claimant's testimony that he cannot stand long secondary to his toe amputation; that he does not lift much; that he has neuropathy; and that he generally elevates his legs five to six hours a day. Likewise, I have

> considered the diagnosis of diabetic polyneuropathy and obesity in Dr. Olaiya's treatment records and that Dr. Olaiya has prescribed claimant a cane and a disability placard for his vehicle (Exhibits 7D/1-3; 11F, and 14F/5, 6).
>
> Nonetheless, the overall evidence does not support more extensive exertional limitations. In particular, while claimant had an A1C of 11.4 in June 2018 when his left great toe was amputated, this occurred in the setting of admitted medical non-compliance (Exhibits 1F, 5F, and 12F). I have considered that Dr. Olaiya referred claimant to an endocrinologist in May 2019, but the record contains no treatment notes from an endocrinologist. Moreover, since claimant re-initiated diabetes medication, his A1C has decreased. Notably, records document few, if any A1C levels greater than 8.5 (Exhibits 5F and 11F). Furthermore, claimant was not prescribed a cane until nearly a year after his left great toe amputation. Specifically, records reveal claimant was prescribed a cane on May 14, 2019, which notably corresponds to the date Dr. Olaiya completed forms at exhibits 8F and 9F relating to conditions claimant alleged in association with his claim for a period of disability and disability insurance benefits (Exhibits 7D/1 and 14F/5). Moreover, while Dr. Olaiya reported in association with the prescription of the disability placard that claimant could not ordinarily walk one hundred feet non-stop and that he could not ordinarily walk without the use of an assistive device, Dr. Olaiya's own treatment records do not regularly document subjective complaints of difficulty walking or observations of an abnormal gait (Exhibits 7D/2, 3; 5F, 11F, and 14F/6).

Tr. 17.

The ALJ then discussed Plaintiff's treatment records from his podiatrist, Dr. Amy Wisdo. *Id.* In particular, the ALJ noted that prior to Plaintiff's visit to Dr. Wisdo in June 2019, he had few complaints of pain with ambulation. *Id.* Dr. Wisdo documented that Plaintiff had dystrophic nails and a superficial right hallux open wound, both of which were treated with debridements. *Id.* The ALJ noted "[t]reatment records, however, do not reveal that more than similar, conservative treatment has been recommended in association with these findings." *Id.* The ALJ further noted that Plaintiff neither complained of reduced strength, nor did the records indicate such findings. *Id.* As to Plaintiff's sensory abilities, the ALJ recounted:

> Although claimant's primary care provider noted unspecified light touch and vibratory deficits over the feet and legs in July 2018, the record does not contain objective findings establishing specific abnormal measurements of sensation until June 2019, when podiatrist Dr. Wisdo began noting "protective sensation to 5.07 monofilament diminished to the right and left foot" (Exhibit 13F). Despite these

12

> findings, however, treatment records do not contain an abnormal electromyogram and nerve conduction study. Additionally, treatment records do not document, that claimant made reports of specific limitations in association with his body habitus or that any provider has advised claimant to elevate his legs.

Tr. 17-18. The ALJ found Plaintiff could not climb ladders, ropes, or scaffolds based on her consideration of Plaintiff's "diabetes and his history of left great toe ambulation [sic], his testimony that he has neuropathy, his diagnosis of diabetic polyneuropathy, and his obesity." Tr. 18. However, in the ALJ's view, no such documented abnormal findings precluded Plaintiff from frequently climbing ramps and stairs, stooping, kneeling, crouching, and crawling. *Id.*

The ALJ further considered Plaintiff's reported activities, noting as follows:

> [C]laimant testified he drives short distances. He testified he can use a computer for two hours a day, and that he goes online to conduct research for friends. He said he currently is researching teardrop campers for a friend. Claimant testified that he watches television, occasionally cooks light meals, helps load and unload the dishwasher and occasionally vacuums. He testified he plays ball and sits on the couch with his granddaughter on weekends. He said he and his wife care for his granddaughter on weekends. He reported he likes to go to the cigar lounge and that he goes camping once or twice a year. Claimant testified that prior to developing his current foot wound, he swam daily for weight loss.

*Id.*

The ALJ was not persuaded by either the prior administrative findings of the state agency medical consultants or the opinion offered by Plaintiff's treating physician, Dr. Olaiya. *Id.*

### b. Whether Plaintiff's Neuropathy Was Severe

Although presented as part of Plaintiff's RFC issue, Plaintiff's first set of arguments are directed to an alleged flaw in the ALJ's Step Two analysis. Step Two is a threshold determination of whether a claimant has a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A

13

severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms[.]" 20 C.F.R. § 404.1508. It is the claimant's burden to prove that he suffers from a medically severe impairment. *Bowen v. Yuckert*, 482 U.S. at 146 n.5.

At Step Two, the ALJ acknowledged Plaintiff's hypertension, history of paroxysmal atrial fibrillation, diabetic retinopathy, diabetic nephropathy, diabetic polyneuropathy, dyslipidemia, and obesity. Tr. 12. However, she did not find those impairments to be severe. *Id.* With regard to Plaintiff's neuropathy, the ALJ found "the record does not contain objective findings establishing specific abnormal measurements of sensation for a period of 12 continuous months." Tr. 14.

Plaintiff argues that by requiring "'*specific* abnormal measures of sensation[,]'" the ALJ imposed too high a burden on Plaintiff for establishing that his neuropathy was severe. *See* ECF No. 14 at 21 (quoting Tr. 14) (emphasis added in Plaintiff's brief). However, even if Plaintiff is correct that the ALJ erred in finding his neuropathy not to be severe, any such error was harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits when ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"). "As long as a claim is not denied at step two, it is generally unnecessary for the ALJ to have specifically found any additional alleged impairment to be severe." *Bryant v. Comm'r, Soc. Sec. Admin.*, No. 2:15-CV-4786-RMG-MGB, 2017 WL 394500, at *9 (D.S.C. Jan. 10, 2017), *report and recommendation adopted sub nom. Bryant v. Colvin*, No. CV 2:15-4786-RMG, 2017 WL 384302 (D.S.C. Jan. 25, 2017). *See also Martinez v. Astrue*, No. CA 1:11-850-CMC-SVH, 2012 WL 3580675, at *10 (D.S.C. July 30, 2012), *report and*

14

*recommendation adopted*, No. CA 1:11-850 CMC-SVH, 2012 WL 3582799 (D.S.C. Aug. 17, 2012) ("A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three."). In other words, "[a]s long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." *McClain v. Colvin*, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted). For that reason, Plaintiff's arguments that the ALJ erred in finding his neuropathy was not severe are unavailing.

                c.        The ALJ's Discussion of Plaintiff's Ability to Balance

Even when impairments are not found to be severe, the ALJ must consider the limitations and restrictions attributable to such impairments. *See* SSR 96-8p, 1996 WL 374184, at *5 ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim."). Plaintiff argues that the ALJ did not properly consider how the paresthesia and numbness that he felt in his feet would affect Plaintiff's ability to stand and balance, particularly when combined with the amputation of Plaintiff's left great toe, which the ALJ had found to be severe. ECF No. 14 at 23. As noted by Plaintiff, Dr. Olaiya had opined that Plaintiff should never balance during an eight-hour workday. Tr. 357. But "[t]he ALJ did not explain why this limitation was not supported by the evidence documenting Haws' amputated toe and symptoms of neuropathy." ECF No. 14 at 23.

The Commissioner argues that "[i]n determining Plaintiff's RFC, the ALJ considered the impact of all of Plaintiff's impairments, including those that could have affected his ability to balance." ECF No. 18 at 17. The Commissioner relies upon some instances in the record where

15

Dr. Olaiya noted normal findings or a normal gait. *See id.* (citing Tr. 331-32 ("no clubbing, no edema, no cynosis" and "no fall risk factors" and "no falls in the past year"); 334-36 (same); 338-40 (full range of motion in all joints, normal gait, normal diabetic foot exam; no fall risk factors)). The Commissioner further cites notes by other medical professionals who recorded Plaintiff's independent ambulation and normal findings both prior to and soon after his amputation. *See id.* (citing Tr. 236, 255, 269 (independent ambulatory status as of June 7, 2018)[5]; 305-06 ("ambulating with boot" two weeks post amputation, "[h]ealing well, no signs of infection[,]" sutures removed)).[6] The Commissioner submits that the ALJ's specific and detailed explanation, which noted a lack of abnormal findings and conservative treatments, was sufficient to support her RFC finding. ECF No. 18 at 18-19.

The ALJ has the duty to weigh the evidence, resolve material conflicts in the record, and decide the case accordingly. *See Richardson v. Perales*, 402 U.S. at 399. This court may not reweigh the evidence or substitute its own judgment for the Commissioner's, even if it finds the evidence is susceptible to more than one rational explanation. *See Hays*, 907 F.2d at 1456. Here, the ALJ recognized Plaintiff's testimony that he had poor balance when standing for long periods and that he was limited to balancing for only 10 or 12 minutes at a time. Tr. 16. The ALJ further indicated that she considered Plaintiff's diabetes and history of left great toe amputation in combination with his testimony that he had neuropathy, his diagnosis of diabetic polyneuropathy, and his obesity. Tr. 18. The ALJ found that Plaintiff could perform the exertional demands of sedentary work, except that he could never climb ladders, ropes, or scaffolds, and he could only

---

[5] These notations are from emergency department records before Plaintiff's toe was amputated.
[6] The remainder of the citations offered by the Commissioner are either from duplicate records of Plaintiff's visits to Dr. Olaiya or from medical records from 2012 and 2014, which note that Plaintiff had normal gait and station at those times.

frequently climb ramps and stairs, stoop, kneel, crouch, and crawl. Tr. 17-18. She did not identify any other non-exertional limitations. Absent from the ALJ's discussion is any analysis of Plaintiff's ability to balance. Thus, apparently the ALJ found no need to restrict Plaintiff's ability to balance, despite Plaintiff's testimony, the opinion of Dr. Olaiya that Plaintiff could never balance (Tr. 357), and the opinion of a state agency medical consultant that Plaintiff was limited to frequent balancing (Tr. 70).[7]

Given the ALJ's lack of explanation related to her consideration of Plaintiff's ability to balance in determining Plaintiff's RFC, the undersigned is unable to determine if the ALJ's decision is supported by substantial evidence. In *Mascio v. Colvin*, the Fourth Circuit addressed whether an ALJ's failure to perform a function-by-function assessment necessitates remand. *Mascio v. Colvin*, 780 F.3d 632, 636-37 (4th Cir. 2015). The court held that "a per se rule [requiring remand] is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* at 636. Nevertheless, the court "agree[d] with the Second Circuit that '[r]emand may be appropriate . . . *where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review*.'" *Id.* (emphasis added). As outlined above, the ALJ did not discuss Plaintiff's ability to balance and only mentioned Plaintiff's balance when recounting his own testimony at the hearing. The level of analysis the ALJ provided with respect to Plaintiff's ability to balance is insufficient. *See Dowling*

---

[7] Of note, the ALJ was not persuaded by Dr. Olaiya's opinion, in part, due to a lack of abnormal findings in the medical records to support the restrictions to which Dr. Olaiya opined. Tr. 18-19. The ALJ also rejected the opinions of the state agency medical consultants because they opined that Plaintiff was capable of performing light work, but the ALJ found the evidence to support a sedentary level of functioning. Tr. 18. The ALJ did not specifically discuss the non-exertional limitations outlined in the medical opinions of the state agency medical consultants. *Id.*

*v. Comm'r of Soc Sec. Admin.*, 986 F.3d 377, 388 (2021) ("[T]he ALJ barely mentioned Appellant's sitting problems in his decision, and discussed them only when rattling off a laundry list of her many impairments and functional restrictions. This grouping of Appellant's sitting limitations with her other impairments and restrictions is a far cry from the 'function-by-function analysis' the ALJ was required to conduct.").

Moreover, Plaintiff's ability to balance is "contested," and relevant to his disability status. Contrary to the suggestion that Plaintiff's ability to balance was covered by the ALJ's consideration of his ability to stand and walk, balancing is a separate non-exertional limitation. *See* SSR 96-9p, 1996 WL 374185, at *7 ("In the [Selected Characteristics of Occupations], 'balancing' means maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery or erratically moving surfaces."). The ALJ never indicated that Plaintiff needed a cane for balance for prolonged ambulation but was otherwise able to balance without one—indeed, the ALJ never articulated why she found Plaintiff's cane was needed for prolonged ambulation only. Had the ALJ properly evaluated Plaintiff's ability to balance, it is possible that his ability to perform sedentary work would have been eroded to the point of disability. *See, e.g.*, SSR 96-9p, 1996 WL 374185, at *7 ("[A]n individual who must use a hand-held device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded."). In any event, the ALJ's

deficient analysis of Plaintiff's ability to balance frustrates meaningful review. Accordingly, the undersigned remands this matter so that the ALJ may provide a clearer explanation of her consideration of Plaintiff's ability to balance.

    2.    Consideration of Other Issues

Although this matter is being remanded for consideration of Plaintiff's ability to balance within the RFC analysis, the Commissioner is to further consider the other allegations of error raised by Plaintiff concerning the medical opinions and subjective symptomology.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, pursuant to the power of the court under sentence four of 42 U.S.C. § 405(g), this matter is hereby reversed and remanded for further administrative proceedings as discussed above.

    IT IS SO ORDERED.

November 23, 2021                                                    Kaymani D. West
Florence, South Carolina                                  United States Magistrate Judge